# LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* KENTUCKY.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 7.   Argued November 9, 1900. — Decided January 6, 1902.

The question of the validity of the constitution and laws of Kentucky, under which these proceedings were had, is properly before the court, whose consideration of it must, however, be restricted to its Federal aspect.

This court must accept the meaning of the State enactments to be that found in them by the state courts.

A state railroad corporation, voluntarily formed, cannot exempt itself from the control reserved to the State by its constitution, and, if not protected by a valid contract, cannot successfully invoke the interposition of Federal courts, in respect to long haul and short haul clauses in a state constitution, simply on the ground that the railroad is property.

A contract of exemption from future general legislation unless it is given expressly or follows by implication equally clear with express words, cannot be deemed to exist.

A railroad charter is taken and held subject to the power of the State to regulate and control the grant in the interest of the public.

Interference with the commercial power of the general government to be unlawful must be direct.

AT the January term, 1895, of the Marion County circuit court of the State of Kentucky, an indictment was found against the Louisville and Nashville Railroad Company, a corporation of the State of Kentucky, for an alleged violation of section 218 of the constitution of the State, and section 820 of the Kentucky statutes, in charging more for the transportation of coal from Altamont, Kentucky, to Lebanon, Kentucky, than to Louisville and Elizabethtown, Kentucky, over railroads which the company were operating under its charter. The indictment alleged that it was filed upon the recommendation of the state railroad commission. The trial resulted in a judgment of conviction and a fine of $300, which, on appeal, was, on May 20, 1899, affirmed by the Court of Appeals. From that judgment of the Court of Appeals a writ of error was allowed by the Chief Justice of that court on June 28, 1899, and the case was brought to this court.

*Mr. William Lindsay* for plaintiff in error. *Mr. Walker D. Hines* and *Mr. H. W. Bruce* were on his brief.

*Mr. H. W. Rives* filed a brief for defendant in error.

MR. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

This case is here on a writ of error to a judgment of the Court of Appeals of the State of Kentucky, affirming a judgment of the circuit court of Marion County, Kentucky, sentencing the Louisville and Nashville Railroad Company to a fine of $300 for an alleged violation of a statute of that State, which declares, among other things, that it shall be unlawful for any person or corporation owning or operating a railroad in the State to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of property of like kind, under substantially similar circumstances and conditions, for a shorter than for longer distance, over the same line, in the same direction, the shorter being included in the longer distance.

This statute is based upon section 218 of the constitution of the State of Kentucky, adopted in 1891. The statute which is section 820 of the Kentucky statutes and section 218 of the constitution are set forth in full in the report of the case of *McChord and others* v. *Louisville & Nashville Railroad,* and cognate cases, *ante* 483, and need not be here copied at length.

Those cases were here on appeal from final decrees of the Circuit Court of the United States for the District of Kentucky, enjoining the railroad commission of the State from enforcing against the complainants, of which the Louisville and Nashville Railroad Company, the plaintiff in error in the present case, was one, the provisions of an act of the Commonwealth of Kentucky, approved March 10, 1900, entitled "An act to prevent railroad companies or corporations owning and operating a line or lines of railroad, and its officers, agents and employés, from charging, collecting, or receiving extortionate freight or passenger rates in this commonwealth, and to further increase and define the duties and powers of the railroad commission in ref-

erence thereto, and prescribing the manner of enforcing the provisions of this act and penalties for the violation of its provisions."

The occasion of the passage of this act of March 10, 1900, was a decision of the Court of Appeals of Kentucky holding that section 816, which declared that any railroad company which should charge and collect more than a just and reasonable rate of toll or compensation for the transportation of passengers or freight in that State, was guilty of extortion, could not be enforced as a penal statute for want of certainty. *Louisville & Nashville Railroad* v. *Commonwealth*, 99 Ky. 132.

The effort was made in the Circuit Court of the United States, and successfully, to have it held that by the said act of March 10, 1900, section 819, in so far as it provided an action by way of information, and for liability in damages, and that indictments should be made only on the recommendation or request of the railroad commission, was repealed by necessary implication; and that accordingly the order of the commission, fixing the rate, toll or compensation they may charge, was self-executing, and that no duty to enforce it was imposed on the commission; that the railroad companies were shut up by the act to the final determination of the commission that they have charged more than a just and reasonable rate; that on the trial indictments for failure to observe the rates made by the commission, the courts cannot entertain any inquiry as to the reasonableness of rates so fixed, because such inquiry is unwarranted by the statute, and therefore illusory and worthless; and that even if the question of constitutionality could be raised in defence, yet that if the order of the commission were permitted to be entered of record, the companies, if they did not comply, would be at once exposed to innumerable prosecutions and to financial ruin by the accumulation of penalties before a judicial decision as to the validity of the statute could be had, if it should then happen that the statute was upheld.

It was, however, held by this court that it was not the intent or effect of the act of March 10, 1900, to repeal those provisions of section 819, requiring indictments to be found only on the recommendation of the commission, nor to circumscribe,

in this particular, the general duty of the commission to see that the law relating to railroads should be faithfully executed. This view of the meaning and effect of the legislation was that taken by the Court of Appeals of Kentucky in the case of *Illinois Central Railroad Company* v. *Commonwealth*, decided while the appeals from the decrees of the Circuit Court of the United States were pending in this court. In that case the railroad company was indicted under section 820, and fined for charging more for a shorter than a longer haul. The indictment was returned before the railroad commission had determined whether the railroad company should be exonerated as provided in that section, and the Court of Appeals held that " to allow the carrier to be indicted in advance of any action by the railroad commission under this section would be to deprive it of all opportunity for exoneration. The long and short haul matter is only another form of undue discrimination and preference, which are provided for by section 819, and indictments under this section can only be had upon the recommendation of the railroad commission. This has been a settled legislative policy, as shown by the act of April 6, 1882, (see General Statutes, 1021,) which was in force at the time of the adoption of the constitution and the present statutes. In other words, the legislature has always acted upon the idea that the interests of the entire people of the State should be looked to in these matters, and that the railroad commission must first determine them before the grand juries of the State should find indictments."

The conclusion reached by this court, therefore, was that the duty of enforcing its rates rests on the commission, and that there was no basis for interposition by a court of equity before the rates were fixed at all; and that whether, after the rates have been determined by the commission, their enforcement could be restrained, was a question not necessarily presented for decision in those cases; and, accordingly, the decrees of the Circuit Court were reversed with a direction to sustain the demurrer and dismiss the bills.

In the case now in hand, the indictment was found, not in advance of any action by the railroad commission, but on its

recommendation. Hence, the question of the validity of the provisions of the constitution and laws of the State of Kentucky under which these proceedings were had, is properly before us. Of course, our consideration of it must be restricted to its Federal aspect; in other words, we are to inquire whether the state enactments, constitutional and statutory, in the particulars involved in this controversy, and under the construction given them by the Court of Appeals, are in conflict with the Fourteenth Amendment of the Constitution of the United States.

At the trial of the indictment it was not seriously disputed that the defendant company had, at the time and place alleged, charged and received, for the carriage and transportation of coal over its line of road, a greater compensation for a shorter than for a longer distance, over the same line in the same direction, the shorter being included within the longer distance, without having been authorized by the railroad commission so to charge, and after the commission, upon investigation, had refused so to do.

But certain facts, which were alleged to show that the circumstances and conditions, under which the charges in question were made and received, were not substantially similar with those ordinarily obtaining, and thus to show that the charges objected to were just and reasonable, were offered in evidence by the railroad company, and excluded from the jury by the trial court, which gave to the jury what amounted, in legal effect, to a peremptory instruction to find the defendant company guilty as indicted. The jury accordingly returned a verdict of guilty, fixing the fine at $300, for which judgment was rendered, and an appeal was taken by the defendant company from that judgment to the Court of Appeals.

It was contended, in the courts below and here, that as section 218 of the constitution of the State of Kentucky, regulating charges for transportation over different distances, is in terms a copy of the provision on the same subject in the interstate commerce act, it should be assumed that it was the intention of the constitutional convention of Kentucky to adopt the construction put upon that provision in the interstate commerce

law by the Federal courts, and that as those courts had held that the existence of actual competition of controlling force in respect to traffic important in amount might make out a dissimilarity of circumstances and conditions, entitling the carrier to charge less for the longer than for the shorter haul, without any necessity to first apply to the commission for authority so to do, that construction should have been followed at the present trial, where evidence was offered tending to show the existence of competition of that character, caused by river transportation of coal from points outside of the State.

Such contention might seem reasonably to have been urged in the state courts, but as they have seen fit to disregard it, and to put a different construction upon the language employed, this court must accept the meaning of the state enactments to be that found in them by the state courts. The prevailing view in the Court of Appeals was thus expressed by Judge Hobson:

"Appellant transported coal from Altamont to Louisville at $1.00 per ton, and to Elizabethtown at $1.30 per ton, while it charged $1.55 per ton from Altamont to Lebanon, an intermediate station on the line of its road. Complaint being made to the railroad commission, it investigated the matter, and made an order in writing declining to exonerate appellant from the operation of the provisions of section 820, and thereafter, at the suggestion of the commission, appellant was indicted in the Marion circuit court, as provided in the statute. The case was tried, and appellant having been adjudged guilty, it prosecutes this appeal to reverse the judgment imposing a fine upon it of $300.

" Appellant justified the difference of the rate on the ground that at Louisville the coal hauled from Altamont came in competition with the coal brought down the Ohio River on boats, and that at Elizabethtown, it came in competition with western Kentucky coal brought there by the Illinois Central Railroad. It insists that these rates could be made no higher on account of this competition, and that the rates to non-competitive points like Lebanon were reasonable, and were unaffected by the reduction referred to, which were necessary for the coal to be handled in those markets at all. The evidence offered by it to

sustain this contention was excluded by the court below on the trial, on the ground that competition is not one of the circumstances or conditions exempting the railroad from the operation of section 218 of the constitution. It is earnestly argued for appellant that the transportation is not under substantially sim-. ilar circumstances and conditions when competition exists at one point and not at another, and we are referred to numerous decisions of the Federal courts so holding. On the other hand, it is contended for the State that to adopt this construction is to emasculate the section and deprive it of all practical operation and effect.

" The precise question thus presented was determined by this court in the case of *Louisville & Nashville Railroad Co.* v. *Commonwealth*, 20 Ky. Law Reporter, 1380, where the construction adopted by appellee was sustained. We are urged to overrule that case; but it was fully considered and then reconsidered by the whole court, and we are disinclined, with substantially no new light upon the question, to set aside the conclusion of the court reached then after so mature deliberation."

In order to fully understand the position of the Court of Appeals it may be well to quote a portion of the opinion of that court in the case of *Louisville & Nashville Railroad Co.* v. *Commonwealth*, 20 Ky. Law Rep. 1380, referred to in the court's opinion in the present case :

" The railroad commission was therefore created to meet the emergency, and was intended to be invested with full power to authorize or not in special cases less compensation to be charged for the longer than shorter distance, and to prescribe from time to time the extent to which the common carrier may be relieved from the operation of the section. In our opinion the court has not jurisdiction to either compel the railroad commission, upon application of the common carrier or those interested in particular industries or callings, to suspend or relax operation of section 218, or, upon application of individuals or corporations feeling aggrieved, to prohibit suspension or relaxation in special cases. While the commission is thus, and to that extent, free from judicial interposition, it cannot of course nullify or, except in special cases, at all suspend operation of section 218;

and though the railroad commission be invested with this unusual power, it must be treated as a constitutional power with which the court cannot interfere."

With the meaning thus attributed to section 218 of the constitution, it is strenuously contended on behalf of the plaintiff in error " that said section has no reasonable relation to securing for the public reasonable rates or the prevention of extortion or undercharges, or the promotion of the safety, health, convenience or proper protection to the public; but that it amounts to an arbitrary and wholly unreasonable interference with perfectly legitimate business, and is, therefore, in conflict with the Fourteenth Amendment of the Constitution of the United States; and since the railroad company has built its railroads in the State of Kentucky, upon the faith of a charter granted it by the State authorizing it to operate those railroads, it has a contract right to engage in such legitimate railroad business, and any such arbitrary interference therewith as results from such a construction of section 218 would impair the obligation of that contract."

To sustain these contentions the learned counsel for the plaintiff in error cite and rely upon those decisions of this court in which it has been held that, under pretence of regulating fares and freights, a State cannot require a railroad corporation to carry persons or property without reward, neither can it do that which in law amounts to a taking of private property for public use without just compensation or without due process of law; that the question of the reasonableness of a rate of charge for transportation by a railroad company, involving as it does the reasonableness both as regards the company and as regards the public, is eminently a question for judicial investigation, requiring due process of law for its determination; and that if the company is deprived of the power of charging reasonable rates for the use of its property, and such deprivation takes place in the absence of an investigation by judicial machinery, it is deprived of the lawful use of its property, and thus, in substance and effect, of the property itself, without due process of law and in violation of the Constitution of the United States; and that in so far as it is thus deprived, while other

persons are permitted to receive reasonable profits upon their invested capital, the company is deprived of the equal protection of the laws. *Stone* v. *Farmers' Loan & Trust Co.*, 116 U. S. 307; *Chicago, Milwaukee & St. Paul Railway Co.* v. *Minnesota*, 134 U. S. 418; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Smyth* v. *Ames*, 169 U. S. 466; *Lake Shore & Michigan Southern Railway Co.* v. *Smith*, 173 U. S. 684.

We certainly have no disposition to overrule or disregard cases so recently decided and so elaborately considered. And accordingly, if it appeared, in the present case, that the railroad commission had arbitrarily fixed rates of fare and freight, in respect to which the railroad company was given no opportunity to be heard, and which were confiscatory, and amounted to depriving the plaintiff in error of its property without due process of law, it would doubtless be our duty to furnish the relief asked for. Nor, yet, are we ready to carry the doctrine of the cited cases beyond the limits therein established. For the Federal courts to interfere with the legislative department of the state government, when acting within the scope of its admitted powers, is always the exercise of a delicate power, one that should not be resorted to unless the reason for doing so is clear and unmistakable.

As we understand the condition of the statutes of Kentucky, there was at the time when this case was tried in the circuit court of Marion County, and when the Court of Appeals disposed of it, no power in the railroad commission to fix or establish rates or tolls which the railroad companies were bound to accept. Such power, however, was given to the commission by the act of March 10, 1900, and it was to restrain the railroad commission from taking action under that act that bills in equity were filed by the Louisville and Nashville Railroad Company and other railroad companies in the Circuit Court of the United States. But in the present case, we have only to do with the question of the validity of the action of the railroad commission's proceeding under section 218 of the constitution and section 820 of the statutes, which prescribe uniformity of rates for all distances, long or short, and make penal disregard of such uniformity by railroad companies, except when

authorized by the commission to charge less for longer than for
shorter distances.   As we have seen, this court held, on the ap-
peals from the Circuit Court of the United States, that it was
not competent for courts of equity to interfere with the action
of the commission in respect to fixing rates before the rates
were fixed at all, and when it could not appear whether the
companies would have any reason to complain of them.

Our present duty is to consider only the objections to the
validity of the long and short haul clauses in the constitution
and the statutes.

It is scarcely necessary to say that courts do not sit in judg-
ment on the wisdom of legislative or constitutional enactments.
This is a general principle; but it is especially true of Federal
courts when they are asked to interpose in a controversy between
a State and its citizens.

This court then is not concerned with the wisdom of the peo-
ple of Kentucky when they declared in their constitution that
it should be unlawful for any person or corporation, owning
or operating a railroad in that State, to charge or receive any
greater compensation in the aggregate for the transportation
of passengers, or of property of like kind, under substantially
similar circumstances and conditions, for a shorter than for a
longer distance over the same line, in the same direction, the
shorter being included within the longer distance.   Nor, as we
have already seen, is it for us to say that the Court of Appeals
of Kentucky erred in so construing that enactment as to forbid
a railroad company from justifying a voluntary disregard of its
command by claiming that competition between its road and
other modes of transportation created substantially dissimilar
circumstances and conditions.

It does not call for argument that railroad companies are in-
corporated to perform a public service, and that it is for the State
to define their powers and to control their exercise of such
powers.   The question for us, in the present case, is whether
the State, by enacting a rule of action for such companies, for-
bidding a greater rate of charges for a shorter than for a longer
distance, and by establishing a railroad commission of the kind
and with the functions disclosed in the constitution and statutes,

deprives the plaintiff in error of its property without due process of law and denies to it the equal protection of the laws.

When the citizens of Kentucky voluntarily seek and obtain a grant from the State of a charter to build and maintain a public highway in the form of a railroad, it would seem to be evident that it takes, holds and operates its road subject to the constitutional inhibition we are considering, and are without power to challenge its validity. It may be that, in a given case, a railroad company may be able to show that the State has disabled itself from enforcing the provision by a contract previously made, and it may be that cases may arise in which the provision cannot be enforced because operating as an unlawful interference with commerce between the States. Indeed, those very positions are taken by the plaintiff in error in this case, and will receive our attention hereafter. But, apart from such contentions, and looking only at the case of a company voluntarily formed to carry on business wholly within a State, we are unable to see how such company can successfully contend that it can be exempted by the courts from the operation of the constitution of the State.

It is said that, while it is true that railroad companies receive their rights to exist and to maintain their roads from the State, yet that their ownership of such roads is *property*, and, as such, is protected from arbitrary interference by the State. But, though it be conceded that ownership in a railroad is property, it is property of a kind that is subject to the regulations prescribed by the State. We do not wish to be understood as intimating that if, hereafter, the railroad commission should fix and establish rates of a confiscatory character the company would be without the protection which courts of equity have heretofore given in cases of that description. What we now say is, that a state corporation voluntarily formed cannot exempt itself from the control reserved to itself by the State by its constitution, and that the plaintiff in error, if not protected by a valid contract, cannot successfully invoke the interposition of the Federal courts, in respect to the long and short haul clause in the state constitution, on the ground simply that the railroad is property. Nor is there any foundation for the ob-

jection that the provision in question denies to the plaintiff in error the equal protection of the laws. The evil sought to. be prevented was the use of public highways in such a manner as to prefer, by difference of rates, one locality to another, and the remedy adopted by the State was to declare such preferences illegal, and to prohibit any person, corporation or common carrier from resorting to them. That remedy included in its scope every one, without distinction, whose calling, public in its character, gave an opportunity to do the mischief which the State desired to prevent. The practical inefficiency of this remedy to reach the desired end, and the resulting injury to the welfare of both the producers and the consumers of an article like coal, when brought into competition with coal brought from without the State, are strongly urged on behalf of the plaintiff in error; but, however well founded such objections may be, they go to the wisdom and policy of the enactment, not to its validity in a Federal point of view. The people of Kentucky, if it can be shown that their laws are defective in their conception or operation, have the remedy in their own hands.

It is further contended that the indictment and proceedings in this case were void, because of the nature of the proviso in section 218 of the constitution. That proviso is in the following words: " Provided, that upon application to the railroad commission, such common carrier, or person, or corporation, owning or operating a railroad in this State, may in special cases, after investigation by the commission, be authorized to charge less for longer than for shorter distances, for the transportation of passengers or property; and the commission may, from time to time, prescribe the extent to which such common carrier, or person, or corporation owning or operating a railroad in this State, may be relieved from the operations of this section."

The argument is that " even if it were proper to prohibit absolutely the charging of more for short than long hauls, yet where the law does not do so, but recognizes that there may be legitimate traffic which could thereby be interfered with, it is unconstitutional to entrust the dispensation of the right to en-

gage in such legitimate traffic to a mere administrative tribunal, without any rules by which it may be guided, without specifying any conditions upon which the carriers shall be entitled to enjoy such legitimate traffic, and absolutely free to give or withhold its consent at its own pleasure or will, in any and all cases, without judicial review or control."

But if it be competent for the State, as this argument supposes, to wholly forbid, in every case, and by every carrier, the charging of more for a short than a long haul, it is not easy to see why the State may not permit such charges through the action of a tribunal authorized to investigate the subject and to afford relief in cases deemed proper. Such a provision is *ex gratia*, and in the direction of exonerating the carrier from what the argument concedes to be a lawful limitation. Such an exercise of discretion by the railroad commission would be no more arbitrary than if the constitution had authorized the legislature to allow in special cases a greater charge for the shorter than for the longer distance, and to prescribe the extent of such excess. We are not prepared to accept the view that the railroad commission, in acting under section 218, is merely an administrative body, and as such subject to judicial review. It is rather a constitutional tribunal, empowered, *upon the application of the carrier*, to investigate the special circumstances and conditions which are claimed to justify the relief of the carrier from the operation of this section. It is not compulsory upon the carrier to make such application for relief to the commission. If he does not choose to do so, he will continue to operate his railroad under and subject to the constitutional prohibition. If he elects to resort to the commission, he can no more complain that its judgment is final, when it is against his contention, than the community affected can complain when its judgment is in his favor. Finality is a characteristic of the judgments of all tribunals, unless the laws provide for a review. Nothing is more common than the appointment of juries or commissioners to find the value of lands taken for public use, or to assess damages to them whose findings are deemed final. Yet the evidence on which they act is not preserved, nor do the courts go into any inquiry into the various sources and grounds of judg-

ment upon wl 'ch the appraisers have proceeded. If there are charges of fraud or corruption, the courts may consider them; but it has never been held that the finality of their findings made the action of the appraisers unconstitutional or void. *Shoemaker* v. *United States*, 147 U. S. 282, 305.

The plaintiff in error did not choose to avail itself of the right to apply for relief to the railroad commission, perhaps for the reason that doing so might be regarded as an acquiescence in or waiver of the right to object to the validity of the proviso.

However this may be, it is difficult to see how a Federal question is presented by the apprehensions which the plaintiff may entertain that a resort to the commission might be futile. As already said, the railroad company must be deemed to have accepted its grant, subject to the provisions of the constitution, and this presumption is as applicable to the method provided for exoneration from the prohibition as to the prohibition itself.

We do not put the disability of the company to raise these questions upon the ground of an estoppel, strictly speaking, but upon the proposition that the company takes and holds its franchises and property subject to the conditions and limitations imposed by the State in its constitution. *Munn* v. *Illinois*, 94 U. S. 113; *Davidson* v. *New Orleans*, 96 U. S. 97; *Railroad Commission Cases*, 116 U. S. 307.

We are next to inquire whether the plaintiff in error has been exonerated from these constitutional conditions and regulations by a valid contract subsisting between it and the State.

We do not understand that the counsel for the plaintiff in error claims that, by any provision of its charter, power was given to the company to fix its own rates of charge, or to discriminate in its rates between different places on its line of railroad, and that the constitutional prohibition as to the long and short haul, subsequently enacted, operates, if enforced, as a withdrawal or defeat of that power.

No right, in express terms or by necessary implication, is pointed in the company's charter, granting to the Louisville and Nashville Railroad Company the privilege of discriminating in its tariff of tolls or charges in favor of longer over shorter dis-

tance points. On February 14, 1856, there was passed a general act reserving to the State an unlimited power to amend all charters and amendments thereafter granted. Laws of Kentucky, 1855–6, c. 148. It is true that an amendment to plaintiff in error's charter was granted by an act passed February 28, 1860, by section 1 of which the board of directors were granted authority "in their adjustment of a tariff for freight and passengers, to make discrimination in favor of freights and passage for long over short distances." But it does not seem to be contended that by this amendment of 1860 an irrevocable contract was effected between the State and the company, which could not be affected by a subsequent constitutional enactment. It is scarcely necessary to argue or to cite authority for the proposition that a contract of exemption from future general legislation, either by a constitutional provision or by an act of the legislature, cannot be deemed to exist unless it is given expressly, or unless it follows by an implication equally clear with express words.

But what is claimed is that a railroad company, by mere force of its legal organization and the construction of its road, has a necessarily implied power to fix reasonable rates, and especially has the right to differ rates when competition exists from rates applicable where there is no competition. Such rights, it is said, are essential to enable the company to engage in perfectly legitimate business, and hence that an interference therewith, even by a constitutional enactment, not only deprives the company of its property, or the reasonable use of it, but also impairs the obligation of the contract implied in the grant of its charter.

So far as the question of an implied contract is concerned, we perceive no distinction between the case of a railroad company incorporated before and that of one incorporated after the constitutional enactment in question. As it has been said of the one so it may be said of the other, that the charter is taken and held subject to the power of the State to regulate and control the grant in the interest of the public.

In *Pennsylvania Railroad* v. *Miller*, 132 U. S. 75, it was held that neither the original charter of the railroad company nor subsequent acts conferring additional privileges constituted

such a contract between the State and the company as exempted the latter from the operation of the subsequently adopted constitution of Pennsylvania ; that a constitutional provision, as applied to the company, in respect to cases afterwards arising, did not impair the obligation of any contract between it and the State ; and that the company took its charter subject to the general law of the State and to such changes as might be made in such general law, and subject to future constitutional provision and future general legislation, since there was no prior contract with it exempting it from such enactments.

The same principle was announced in *Louisville Water Co.* v. *Clark*, 143 U. S. 1, and in *Louisville & Nashville Railroad*, v. *Kentucky*, 161 U. S. 677.

In the absence, then, of any express prior contract between the State and the company, exempting the latter from future constitutional enactments, and without conceding that even such a contract would avail to relieve the company from constitutional changes in the exercise of the general police power of the State, it is sufficient to say that we do not find in section 218 of the constitution of Kentucky any impairment of an existing contract between the State and the plaintiff in error.

The final contention, that section 218 of the constitution of Kentucky operates as an interference with interstate commerce, and is therefore void, need not detain us long.

It is plain that the provision in question does not in terms embrace the case of interstate traffic.   It is restricted in its regulation to those who own or operate a railroad within the State, and the long and short distances mentioned are evidently distances upon the railroad line within the State.  The particular case before us is one involving only the transportation of coal from one point in the State of Kentucky to another by a corporation of that State.

It may be that the enforcement of the state regulation forbidding discrimination in rates in the case of articles of a like kind carried for different distances over the same line may somewhat affect commerce generally ; but we have frequently held that such a result is too remote and indirect to be regarded as an interference with interstate commerce ; that the interference

·with the. commercial power of the general government to be unlawful must be direct, and not the merely incidental effect of enforcing the 'police powers of a State. *New York, Lake Erie and Western Railroad* v. *Pennsylvania*, 158 U. S. 431, 439; *Henderson 'Bridge Co.* v. *Kentucky*, 166 U. S. 150.

. A discussion of this subject will be found in the opinion of this court in *Louisville & Nashville Railroad* v. *Kentucky*, 161 U. S. 677, 701, where the same conclusion was reached.

The judgment of the Court of Appeals is

*Affirmed.*