# LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* EUBANK.

ERROR TO THE CIRCUIT COURT OF SIMPSON COUNTY, STATE OF KENTUCKY.

No. 10. Argued November 8, 11, 1901.—Decided January 27, 1902.

Section 218 of the constitution of the State of Kentucky, reads as follows: "It shall be unlawful for any person or corporation, owning or operating a railroad in this State, or any common carrier, to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier, or person or corporation, owning or operating a railroad in this State, to receive as great compensation for a shorter as for a longer distance: *Provided,* That upon application to the Railroad Commission, such common carrier, or person, or corporation owning or operating a railroad in this State, may in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may, from time to time, prescribe the extent to which such common carrier, or person, or corporation owning or operating a railroad in this State, may be relieved from the operation of this section," As construed by the courts of that State, and so far as it is made applicable to or affects interstate commerce, it is invalid.

THE railroad company has brought this case here by a writ of error to the circuit court of Simpson County, State of Kentucky, that being the highest court of the State in which a decision could be had, for the purpose of reviewing the judgment of that court in favor of the defendant in error (plaintiff below) based upon a violation of section 218 of the constitution of Kentucky. That section reads as follows:

"It shall be unlawful for any person or corporation, owning or operating a railroad in this State, or any common carrier, to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of property of like kind,

under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier, or person or corporation, owning or operating a railroad in this State, to receive as great compensation for a shorter as for a longer distance: *Provided,* That upon application to the railroad commission, such common carrier, or person, or corporation owning or operating a railroad in this State, may in special cases, after investigation by the commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the commission may, from time to time, prescribe the extent to which such common carrier, or person, or corporation owning or operating a railroad in this State, may be relieved from the operations of this section."

This action involves the question of the validity of the above section, as construed by the court below with reference to interstate commerce.

The plaintiff, T. R. Eubank, on June 9, 1899, duly filed in the clerk's office of the Simpson County circuit court a petition in which he alleged, in substance, that he was doing business in Franklin, in the State of Kentucky; that the defendant was a corporation chartered under the laws of that State as a common carrier, and that it owned and operated a line of railway for the transportation of freight and passengers from Nashville, Tennessee, running north through Franklin, Kentucky, and continuing on to Louisville, Kentucky, a distance of 185 miles, and that the distance from Franklin, Kentucky, to Louisville, Kentucky, over the defendant's line is 134 miles, and is included in and a part of the distance of 185 miles from Nashville to Louisville; that during the years 1897 and 1898 the defendant transported tobacco for the complainant from Franklin, Kentucky, to Louisville, Kentucky, at the rate of 25 cents per one hundred pounds, and that during all this time the plaintiff was shipping and did ship and transport tobacco from Nashville, Tennessee, to Louisville, Kentucky, over the same road at the sum of 12 cents for one hundred pounds, and the complainant averred in his peti-

tion that the company had no right to charge him a greater freight rate for the transportation of tobacco from Franklin, Kentucky, to Louisville, Kentucky, than 12 cents per one hundred pounds, and he therefore brought suit to recover back from the defendant the difference between that sum and the sum paid by him, viz., 13 cents per one hundred pounds, the amount carried being 145,245 pounds.

The defendant tendered special and general demurrers to this petition on the ground, among others, that it sought to make a law of the State of Kentucky applicable to a rate charged by defendant from Nashville, Tennessee, to Louisville, Kentucky, and that if the law were so construed it would become a regulation of interstate commerce and be invalid, because in conflict with and repugnant to subsection 3 of section 8 of article I of the Constitution of the United States, and also in violation of the interstate commerce act.

These demurrers were overruled by the court, and thereupon the defendant tendered its answer, setting up its defences in four separate paragraphs.

By paragraph 1 it substantially admitted the transportation of the tobacco at the rates stated in the plaintiff's petition. In the second paragraph it averred that its rate of 12 cents per one hundred pounds for the transportation of tobacco, from Nashville, Tennessee, to Louisville, Kentucky, was made under and in conformity with the act of Congress called the interstate commerce act, above referred to, and that in pursuance of the sixth section of that act the rate was printed, posted and kept open to public inspection and duly filed with the Interstate Commerce Commission, and that by virtue of that act it would have been unlawful for the defendant to have charged either more or less than the rate of 12 cents per one hundred pounds from Nashville, Tennessee, to Louisville, Kentucky. The defendant further averred that section 218 of the constitution of the State of Kentucky applied only to a railroad in that State, and had no application to that portion of any railroad that was without the State of Kentucky, and hence had no application to the railroad of the defendant between Nashville, Tennessee, and the state line between Tennessee and Ken-

tucky; and it was averred that the rates which the defendant might charge from Franklin, Kentucky, to Louisville, Kentucky, were not and could not become unlawful under the long and short haul laws of Kentucky by reason of any rates that might be charged by the defendant on traffic transported from Nashville, Tennessee, to Louisville, Kentucky, and that the long and short haul laws of Kentucky could apply only when both the long and short hauls were within Kentucky, and that the hauls from Nashville, Tennessee, to Louisville, Kentucky, were not within the jurisdiction of Kentucky.

Defendant further averred that at the times named in the petition it charged no rate on tobacco to Louisville, Kentucky, from any point in the State of Kentucky on the same line with Franklin and farther from Louisville, than Franklin, less than the rate of 25 cents per one hundred pounds charged by it from Franklin to Louisville. It was further averred that if the constitutional provision in question were so construed as to make this rate of 25 cents per one hundred pounds from Franklin, Kentucky, to Louisville, Kentucky, unlawful by reason of the less rate charged by it from Nashville, Tennessee, to Louisville, Kentucky, the result would be to regulate commerce among the States by the long and short haul laws of Kentucky and to compel the defendant to and it would raise its rates of 12 cents per one hundred pounds from Nashville, Tennessee, to Louisville, Kentucky, unless it could obtain the authority from the railroad commission of Kentucky to charge the less rate from Nashville, Tennessee, to Louisville, Kentucky; that thereby the long and short haul laws of Kentucky would regulate commerce among the States and would be in conflict with and repugnant to the interstate commerce act, and also subsection 3 of section 8, article I, Constitution of the United States, and would therefore be void; and there was contained in the paragraph the following averment, that " the defendant hereby sets up, pleads and relies on the right and privilege secured to it by the said act of Congress and by said provisions of the Constitution of the United States to have its interstate traffic and the commerce conducted among the States and between Kentucky and Tennessee regulated by the Constitution and the laws of the

United States and to be free from the regulation and interference of the constitution and laws of the State of Kentucky."

By paragraph 3 the defendant set up the statute of limitations of the State of Kentucky.

By paragraph 4, the defendant averred that its rate on tobacco from Franklin to Louisville during the times mentioned was much less than the defendant's standard tariff rates for that distance, and that the less rate resulted from and was necessitated by the fact of competition existing at Franklin, Kentucky, which arose from the fact that tobacco could be and was hauled by wagon from Franklin, Kentucky, to Bowling Green, Kentucky, and then shipped to Louisville on boats plying the Green and Barren and Ohio Rivers at extremely low rates of transportation, and on account of competition the defendant had to and did accept the rate of 25 cents per one hundred pounds; that, but for that competition, it would and could have charged a much higher rate, which higher rate would have been just and reasonable, and that the rate of 25 cents per one hundred pounds was just and reasonable in itself by reason of the competition.

It was further averred that Nashville, Tennessee, was situated on the Cumberland River, navigable by boats plying between Nashville and various points on the Ohio River, including Louisville, Kentucky, and that these boats transported tobacco from Nashville to Louisville at extremely low rates of transportation, and that by reason of this water competition Nashville enjoyed extremely low rates for the shipment of tobacco to Louisville and many other places, and if the defendant, at any of the times mentioned, had charged more for the transportation of tobacco from Nashville, Tennessee, to Louisville, Kentucky, than 12 cents per one hundred pounds, it would not have secured the transportation of any of said tobacco from Nashville to Louisville, but the same would have been shipped from Nashville to Louisville, or some other tobacco market, at rates less than 12 cents per one hundred pounds, and thereby the defendant would have wholly lost the transportation of any tobacco from Nashville to Louisville, and that the defendant succeeded in obtaining, even at the low rate of 12 cents per one hundred

pounds, the transportation of only 12 hogsheads of tobacco from Nashville to Louisville during the time named in the petition. It was averred that the tobacco transported by the defendant from Nashville to Louisville was transported under the circumstances and conditions thus stated, and that none of the same could have been transported at any higher rate than 12 cents per one hundred pounds, and that at none of the times mentioned in the petition was the transportation of tobacco from Franklin to Louisville affected by the circumstances or conditions set forth regarding the transportation of tobacco from Nashville to Louisville, and that the competition at Nashville differed substantially from the competition at Franklin, in that it was far more effective and necessitated a much lower rate, and that in making the difference in rates between Franklin and Nashville the defendant simply recognized the substantial difference in the circumstances and conditions of the transportation from and to the two places.

It was also averred that it was to the advantage of the defendant to transport the tobacco that it might secure from Nashville to Louisville at the rate of 12 cents per one hundred pounds rather than lose such transportation altogether, as it would have done if it had attempted to charge more than the rate of 12 cents per one hundred pounds, but the fact that the defendant did transport tobacco from Nashville to Louisville at 12 cents per one hundred pounds did not increase the rate that it charged from Franklin to Louisville or make the rate from Franklin to Louisville any higher than it would otherwise have been, and that if it had refused to transport tobacco from Nashville to Louisville for any less rate than the rate charged from Franklin to Louisville, the Nashville shippers of tobacco could and would have shipped it to Louisville or other tobacco markets over routes which this defendant could not control and at rates not exceeding 12 cents per one hundred pounds, and that the defendant could and did engage in the transportation of tobacco from Nashville to Louisville at the rate of 12 cents per one hundred pounds without in anywise injuring Franklin or any person or interest at Franklin.

Other defences were set up not now material.

The plaintiff demurred to paragraphs 2, 3 and 4 of the defendant's answer, which demurrer was sustained by the court. The plaintiff then moved for judgment for the plaintiff upon the pleadings, which motion, under objection by the defendant, the court granted, and thereupon it was adjudged that the plaintiff recover of the defendant the sum of $188.81 and his costs.

*Mr. Walker D. Hines* for plaintiff in error. *Mr. H. W. Bruce* was on his brief.

*Mr. H. W. Rives* for defendant in error.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The writ of error in this case does not bring up for review any judgment of the Court of Appeals of the State of Kentucky, the highest court of that State. It appears that the circuit court of that State is the highest court in which a decision of the case could be had, presumably on account of the amount of the judgment. There was no opinion delivered by the judge holding the court in which the case was tried, and as the case did not go to the highest court of that State, we are without the benefit of any written opinion of the courts of Kentucky in regard to the question involved. We have already held, in the case of the *Louisville & Nashville Railroad Company* v. *Kentucky*, 183 U. S. 503, that the section of the Kentucky constitution above set forth, as applied to places, all of which are within the State, violates no provision of the Federal Constitution.

The effect of the decision by the state court now under review is to hold that the provision of section 218 of the state constitution is not confined to a case where the long and short hauls are both within the State of Kentucky, but that it extends to and embraces a long haul from a place outside of to one within the State, and a shorter haul between points on the same line and in the same direction, both of which are within the State, and the question is whether the provision of that

constitution as thus construed is or is not a violation of the commerce clause of the Constitution of the United States.

It would seem that the foundation upon which the validity of the constitutional provision is based is the theory that it operates solely upon the rate within the State, making that rate unlawful if it exceed the rate for the longer distance over the same line in the same direction, though, as in this case, the longer distance is from Nashville, Tennessee, to Louisville, Kentucky. The claim must be that the only effect of the provision is to regulate the rate between points within the State and that it has no direct effect upon nor does it in any degree regulate or affect the rate between points outside and those points which are within the State. The contention is that the State does not prescribe or regulate the rates outside of its borders; that the company may announce and enforce any rate it pleases regarding interstate commerce. It simply directs that between points within the State of Kentucky the charge shall not be greater for a shorter haul than for a longer haul, even though such longer haul may be between a point outside and one inside of the State; that this does not constitute an interference with or a regulation by the State of interstate commerce, and hence the provision is valid.

If this contention were correct, and the constitutional provision, as construed by the state court, did not by its enforcement regulate, or immediately and directly influence and affect the interstate commerce of defendant, either as to amount or rates, the provision in question would be valid. But is it correct? And is there no such immediate influence upon or regulation of the interstate commerce of the defendant?

By the demurrer and the motion for judgment on the pleadings it is admitted that the rates from all points on the defendant's road within the State of Kentucky to Louisville for the transportation of tobacco are not too high, but are in fact just and reasonable in themselves, and to that extent the general obligation of a carrier to make charges that are just and reasonable is fulfilled. There is also a rate for the transportation of tobacco from Nashville to Louisville of 12 cents per one hundred pounds, and that rate is arrived at because of the existence

of water competition between the two points which absolutely prevents the company from making a greater charge, for if it did it would get no business; and yet on account of the fact that trains are to be run in any event and expenses incurred by reason of the operation of the road, it pays the company to take the tobacco at the rate named, even though it is below what would otherwise be a fair and reasonable compensation for the transportation. It follows, therefore, and the fact is averred, that although under the circumstances it pays the company to transport the tobacco from Louisville at the rate of 12 cents per one hundred pounds, yet if it were confronted with the alternative of either giving up such transportation (which a charge of 25 cents per one hundred pounds would necessarily result in) or of reducing the charge from Franklin to Louisville to 12 cents per one hundred pounds for tobacco, it would be compelled to give up the transportation from Nashville rather than reduce the charge from Franklin to Louisville. If the State of Kentucky has the right to base its provision for the rate of a short haul within its own borders by comparison with the rate for a longer haul partly within and partly without its own borders, notwithstanding the direct effect of a limitation arrived at by such comparison may be the regulation or even the suppression of the interstate commerce of the carrier, then this provision is valid; otherwise, it would seem to be the reverse.

That the railroad commission is authorized upon application to permit the company to charge less for longer than for shorter distances, is immaterial. If the provision in question, if enforced, does directly affect interstate commerce, its invalidity is not cured by the fact that if the railroad commission should choose, it might permit the interstate charges to remain. In either case the interference is illegal.

The result of the construction of this provision by the court below is in effect to prohibit the carrier from making a less charge for the transportation from Nashville to Louisville than from Franklin to Louisville, or else to make a charge that will prevent its doing any business between the States in the carrying of tobacco. The necessary result of the provision under

the circumstances set up in the answer directly affects interstate rates, or in other words, directly affects interstate commerce, for it directly affects commerce between Nashville and Louisville. The fact is not altered by putting the proposition in another form, and saying that the constitutional provision only prevents the carrier from charging a greater sum for the shorter distance from Franklin to Louisville, both within the State, unless the consent of the railroad commission is obtained, because in either event the charge from Nashville to Louisville enters into and forms a part of the real subject matter of the provision, the greater sum for the shorter distance within the State being compared with the lesser sum for the longer distance without the State; and the prohibition is absolute unless the consent of the commission is obtained, from charging any more for the shorter distance within the State than for the longer distance partly within and partly without the State. And in this case, in order to maintain its state rate, it must fix its interstate rate at an amount which prohibits its doing interstate business.

We fully recognize the rule that the effect of a state constitutional provision or of any state legislation upon interstate commerce must be direct and not merely incidental and unimportant; but it seems to us that where the necessary result of enforcing the provision may be to limit or prohibit the transportation of articles from without the State to a point within it, or from a point within to a point without the State, interstate commerce is thereby affected, and may be thereby to a certain extent directly regulated, and in that event the effect of the provision is direct and important and not a mere incident.

Although not exactly in point, yet the case of *Wabash, St. Louis &c. Railway* v. *Illinois,* 118 U. S. 557, is somewhat analogous in principle. In that case chapter 114 of the Revised Statutes of Illinois, section 126, came under consideration. That section enacted that if any railroad corporation should charge for the transportation of freight, etc., upon its railroad, for any distance within the State, the same or a greater amount of toll or compensation than is at the same time charged, col-

lected or received for the transportation in the same direction of any passenger, etc., over a greater distance of the same road, such charges should be deemed *prima facie* evidence of unjust discrimination prohibited by the act, and penalties were provided for its violation.

An action was brought to recover for a violation of the provisions of the act, and in the declaration it was alleged that the company had charged Elder & McKinney for transporting goods from Peoria in the State of Illinois to New York city at the rate of 15 cents per one hundred pounds, and on the same day the company charged Bailey & Swannell for transporting another carload of the same kind of goods from Gilman in the State of Illinois to the city of New York at the rate of 25 cents per one hundred pounds, although the carload transported for Elder & McKinney from Peoria was carried eighty-six miles further in the State of Illinois than the other carload of the same weight, and it was claimed that as the freight was of the same class in both instances and carried over the same route, except as to the difference of distance, a discrimination against Bailey & Swannell was made in the charges against them as compared with those given to Elder & McKinney, and hence suit was brought. Mr. Justice Miller delivered the opinion of this court, in which he expressed some doubt whether the statute of Illinois had been correctly construed by the court below, yet as that court had given an interpretation to it which made it apply to commerce among the States, although the contract was made within the State of Illinois and a part of its performance was within the same State, this court was held to be bound as to the construction given to the act by the state court. What that construction was is stated by the court itself. It said :

"We see no reason to depart from the conclusion reached in this case when it was here before. See *People* v. *W. St. L. & P. Railway Co.*, 104 Ill. 476. But to avoid misapprehension, we deem it desirable to state explicitly that we disclaim any idea that Illinois has authority to regulate commerce in any other State. We understand and simply hold that, in the absence of anything showing to the contrary, a single and entire contract to carry for a gross sum from Gilman, in this State,

to the city of New York, implies necessarily that that sum is charged proportionately for the carriage on every part of that distance; and that a single and entire contract to carry for a gross sum from Peoria, in this State, to the city of New York, implies the same thing; and that, therefore, when it is shown that there is charged for carriage upon the same line less from Peoria to New York (the greater distance) than from Gilman to New York (the less distance), and nothing is shown to the effect that such inequality in charge is all for carriage entirely beyond the limits of this State, a *prima facie* case is made out of unjust discrimination under our statute occurring within this State. We hold that the excess in the charge for the less distance presumably affects every part of the line of carriage between Gilman and the state line proportionately with the balance of the line. The judgment is affirmed." *Wabash, St. Louis & Pacific Railway* v. *Illinois*, 105 Ill. 236.

In regard to this question, Mr. Justice Miller, in the course of his opinion, said:

"It becomes, therefore, necessary to inquire whether the charge exacted from the shippers in this case was a charge for interstate transportation, or was susceptible of a division which would allow so much of it to attach to commerce strictly within the State, and so much more to commerce in other States. The transportation, which is the subject-matter of the contract, being the point on which the decision of the case must rest, was it a transportation limited to the State of Illinois, or was it a transportation covering all the lines between Gilman in the one case and Peoria in the other in the State of Illinois, and the city of New York in the State of New York?"

The court held it was the latter, and said, after examining the other cases (page 575):

"We must, therefore, hold that it is not, and never has been, the deliberate opinion of a majority of this court that a statute of a State which attempts to regulate the fares and charges by railroad companies within its limits, for a transportation which constitutes a part of commerce among the States, is a valid law."

In regard to the effect of the Illinois statute upon interstate commerce, it was further said : ·

" Let us see precisely what is the degree of interference with transportation of property or persons from one State to another which this statute proposes.   A citizen of New York has goods which he desires to have transported by the railroad companies from that city to the interior of the State of Illinois.   A continuous line of rail over which a car loaded with these goods can be carried, and is carried habitually, connects the place of shipment with the place of delivery.   He undertakes to make a contract with a person engaged in the carrying business at the end of this route from whence the goods are to start, and he is told by the carrier, ' I am free to make a fair and reasonable contract for this carriage to the line of the State of Illinois, but when the car which carries these goods is to cross the line of that State, pursuing at the same time this continuous track, I am met by the law of Illinois which forbids me to make a free contract.concerning this transportation within that State, and subjects me to certain rules by which I am to be governed as to the charges which the same railroad company in Illinois may make, or has made, with reference to other persons and other places of delivery.'   So that while that carrier might be willing to carry these goods from the city of New York to the city of Peoria at the rate of fifteen cents per hundred pounds, he is not permitted to do so because the Illinois railroad company has already charged at the rate of twenty-five cents per hundred pounds for carriage to Gilman, in Illinois, which is eighty-six miles shorter than the distance to Peoria.

" So, also, in the present case, the owner of corn, the principal product of the country, desiring to transport it from Peoria, in Illinois, to New York, finds a railroad company willing to do this at the rate of fifteen cents per hundred pounds for a carload, but is compelled to pay at the rate of twenty-five cents per hundred pounds, because the railroad company had received from a person residing at Gilman twenty-five cents per hundred pounds for the transportation of a carload of the same class of freight over the same line of road from Gilman to New York. This is the result of the statute of Illinois, in its endeavor to

prevent unjust discrimination, as construed by the Supreme Court of that State. The effect of it is, that whatever may be the rate of transportation per mile charged by the railroad company from Gilman to Sheldon, a distance of twenty-three miles, in which the loading and the unloading of the freight is the largest expense incurred by the railroad company, the same rate per mile must be charged from Peoria to the city of New York."

Is not this reasoning applicable here? The Nashville owner of tobacco wishes to have it transported to Louisville and asks the defendant to carry it. It responds that it would like to carry it at the rate of twelve cents per one hundred pounds, but that it cannot do so because it has established a reasonable rate between points both of which are in Kentucky, and which rates are more than twelve cents, and that if it were to carry at the rate of twelve cents from Nashville to Louisville it would be necessary, on account of the law of Kentucky, to carry at the same rate all tobacco between all points in that State, which would entail a loss in the business between those points, which the company would not be justified in sustaining; therefore the transportation is declined, for it cannot get more than twelve cents from the Nashville man. Is it an answer to this statement to say that the company can get this business by lowering its rates within the State to the same rate as charged from Nashville? Is it bound, in order to secure this interstate commerce, to lower its rates all through the State? If it be, is not the law which accomplishes this result a direct interference by the State with interstate commerce? And if it do not lower its state rates and in consequence must raise its interstate rates, in order to make its state rates valid, and thus must lose to an appreciable and important extent the interstate commerce, is not a law from which such necessary and direct consequences result a regulation in effect by the State, of that commerce which ought to be free therefrom?

In *Hall* v. *De Cuir*, 95 U. S. 485, it was said : " But we think it may safely be said that state legislation which seeks to impose a direct burden upon interstate commerce, or to interfere directly with its freedom, does encroach upon the exclusive power of Congress."

The vice of the provision lies in the regulation of the rates between points wholly within the State, by the rates which obtain between points outside of and those which are within the State.

The facts in this case have been thus fully referred to for the purpose of showing how directly and also how injuriously such a provision might affect interstate commerce.   Other cases may be supposed, where the effect might not be so oppressive.   But the fact which vitiates the provision is that it compels the carrier to regulate, adjust or fix his interstate rates with some reference at least to his rates within the State, thus enabling the State by constitutional provision or by legislation to directly affect, and in that way to regulate, to some extent the interstate commerce of the carrier, which power of regulation the Constitution of the United States gives to the Federal Congress.

It has been urged that, assuming Congress to have the power to fix interstate rates, if that body should prescribe the interstate rate for the transportation of commodities (tobacco, for instance) from Nashville to Louisville, for a railroad carrier, that the State might then fix the local rates by that standard, and if so, why could it not do the same thing when the carrier itself fixes its interstate rate?   In the case supposed, the rate is fixed and the interstate commerce regulated by the body which has the power to impose such rate on the carrier and to regulate its interstate commerce.   The State might, in the case supposed, enact that the road should not charge more, or at a greater rate, for a short haul within the State than Congress provided for the long interstate haul.   The reason is that Congress in the case presented is assumed to have the power to direct and regulate the interstate rate, and having that power and exercising it the State could then provide that its internal charge should not exceed that rate, and there would be in that case no interference with or regulation of interstate commerce directly or indirectly by the State, its action could have no possible effect upon the interstate rate, as the amount of the charge would be regulated by the body with which the right of regulation exists.

It seems also to be thought that there is no regulation of com-

merce, provided it is not interfered with or regulated in all ways by which transportation of commodities between interstate localities may be accomplished; that if the commodity (tobacco in this case) can be transported by any other means or route, or by any other individual or corporation than the one affected by the regulation, commerce is not regulated within the constitutional meaning.    On the contrary, it seems quite clear that any law which in its direct result regulates the interstate transportation of a single individual carrier, or company of carriers, violates the provision in question; that it is no answer to say the commodity can still be transported by another carrier or by water instead of rail, so long as the direct effect of the state legislation is to regulate the transportation of the commodity by a particular means, by rail instead of by water, or by a particular individual or company.

It is also argued that if Congress should enact that an interstate rate shall be the sum of the local rates prescribed by the several States for the parts in the line within its borders, it could not correctly be maintained that such enactment would amount to an interference with the power of the State over local rates, and the mere fact that Congress accepted the local rates and made them the basis of an interstate rate could not be held to be an interference by Congress with local commerce, and if not, how can it be held an interference by the State when it recognizes existing interstate rates as a basis for its legislation concerning local rates?    We think there is no analogy between the two cases.

In the case supposed, the States have fixed the local rates within their respective borders, and the action of Congress in fixing their sum as the rate for interstate commerce does not in any way regulate or interfere with the respective state rates already, or from time to time, adopted by the State.    In thus fixing the interstate rate Congress may most seriously interfere with or regulate interstate commerce, but that it has the right to do, and on the other hand the State by such a statute regulates the local rate, but that it has the right to do.

Congress does not directly or indirectly interfere with local rates, by adopting their sum as the interstate rate.

In the case at bar the State claims only to regulate its local rates by the standard of the interstate rate, and says the former shall be no higher than the latter, but the direct effect of that provision is, as we have seen, to regulate the interstate rate, for to do any interstate business at the local rate is impossible, and if so, it must give up its interstate business or else reduce the local rate in proportion. That very result is a hindrance to, an interference with, and a regulation of, commerce between the States, carried on, though it may be, by only a single company.

We are of opinion that as construed by the state court, and so far as it is made applicable to or affects interstate commerce, the two hundred and eighteenth section of the constitution of Kentucky is invalid, and the judgment of the circuit court of Simpson County, Kentucky, is therefore

*Reversed, and the case remanded to that court for such further proceedings therein as shall not be inconsistent with this opinion; and it is so ordered.*

MR. JUSTICE BREWER, with whom concurred MR. JUSTICE GRAY, dissenting.

I am unable to concur in the opinion and judgment in this case. We have just held that section 218 of the constitution of Kentucky and section 820 of the Kentucky Statutes, based thereon, are not in conflict with the Constitution of the United States when applied to a case in which both the long and the short haul are wholly within the State. *Louisville & Nashville Railroad Company* v. *Commonwealth of Kentucky*, 183 U. S. 503. The constitutional section, briefly stated, forbids a carrier from charging more for a short than for a long haul within which the short haul is included. The prohibition is upon the short haul charge. There is no prohibition in respect to the long haul charge, no restriction of the power of the carrier over it, no regulation concerning it, no prescribing by whom or how or when it shall be made—all this is absolutely untouched by the section.

The proposition now advanced is that while the State may constitutionally prohibit a short haul charge in excess of a long

haul charge, it can do so only when both hauls are within the limits of the State. Nothing in the section makes such limitation. Nothing in the Federal Constitution, in terms at least, restricts the power of the State in this respect over its internal commerce. This question may arise under either of two conditions: one in which Congress has prescribed the interstate rate, and the other in which it has left the matter to be fixed by the carrier.

Considering the first of these conditions, suppose Congress in the exercise of its power over interstate commerce should enact that all interstate passengers be charged exactly four cents a mile, and the railroad company, while obeying that statute in its charges for carrying passengers from Nashville to Louisville, should from Franklin to Louisville charge five cents a mile, could it be pretended that the prohibition of the state constitution against charging more for a short haul than for a long haul was not operative because an interference with interstate commerce? Has the State no power to compel its corporations to give to parties traveling within its limits the same rates and privileges that Congress prescribes for interstate passengers? And can it not do so by simply prohibiting a greater charge for a long than a short haul? In other words, is it interfering with interstate commerce when the State, not prescribing the charges for interstate travel, simply requires that the passenger shall be charged no higher rates for local travel?

The form in which the state legislation is cast cannot be vital in determining the question of power. If an act, which in terms prescribes a rate per mile for local travel the same as has been prescribed by Congress for interstate travel, is within the power of the State, (and that it is cannot be doubted,) surely one accomplishing the same thing by simply forbidding the carrier to charge more for a short than for a long haul is likewise within its power. The State is merely using the standard fixed by Congress and enforcing that standard in respect to local rates. In *Miller's Executors* v. *Swann*, 150 U. S. 132, it was held that the construction of that part of the state statute which authorized the disposal of the state's lands in accordance

with the provisions of the public land laws of the United States involved no Federal question.   The reference to the land laws of the United States was simply by way of selecting a standard.

But if a State may select as a standard the interstate rates prescribed by Congress and make its local rates the same, without interfering with interstate commerce, it would certainly seem that it could in like manner take the interstate rates which the carrier himself prescribes, and compel conformity of local rates thereto and still not be subject to the charge of interfering with interstate commerce.   It is strange to be told that the action of a carrier in fixing interstate rates is potent to render unconstitutional the legislation of the State respecting local rates, when the like action of Congress in prescribing interstate rates is not so potent.   In other words, action by the carrier in pursuit of its own financial interests overturns the constitution and statute of the State when like action by Congress in the exercise of its constitutional power does not.

It must be borne in mind that there is here no question of reasonableness of rates.   It is true the carrier avers that the rate of 25 cents per 100 pounds from Franklin to Louisville was just and reasonable, but it also avers that it made that charge only by reason of water competition, whereas " but for that competition the defendant would and could have charged a much higher rate, which higher rate would have been just and reasonable."   According to these allegations, while 25 cents was a just and reasonable rate, a much higher rate would also be just and reasonable; and it is nowhere alleged that a rate of 12 cents—that from Nashville to Louisville—would have been unreasonable as a rate between Franklin and Louisville. If invalid at all, it is not because it is no higher than the rate between Nashville and Louisville, but because it is in and of itself unreasonably low for the services rendered.   As the amount of tobacco which the defendant shipped from Nashville to Louisville between February 23 and July 15 was only 12 hogsheads, weighing 20,910 pounds, and paying $25.09 freight, it is obvious that the loss of this entire amount of freight would not have worked a confiscation of the defendant's railroad property, if that be the test of reasonableness so far as

the power of the legislature over rates is concerned though, as to the true test of reasonableness see *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79.

The question may be looked at in another light. The railroad company avers that it made its rate of 12 cents from Nashville to Louisville in conformity with the act of Congress; that the said rate was duly printed, posted and kept open to public inspection, and that by virtue of the interstate commerce act it was unlawful for it to charge either more or less than the rate of 12 cents from Nashville to Louisville. Suppose the legislature of Kentucky, accepting that statement as correct, should pass an act in terms prohibiting this company from charging more than 12 cents from Franklin to Louisville, who would undertake to say that such act was unconstitutional without evidence that in and of itself the rate of 12 cents was unreasonable within some recognized definition of reasonableness? Does the act become *prima facie* unconstitutional because, instead of naming 12 cents, the legislature forbids the carrier from charging more than 12 cents which the carrier has fixed as its rate from Nashville to Louisville?

Again, Louisville is on the northern border of the State, and the route of defendant's railroad extends through the State and thence southward to Nashville. Every place on the line of the road within the limits of Kentucky makes therefore, a shorter haul to Louisville than the haul from Nashville, and is included in the latter. Under the reasoning of this opinion the State of Kentucky has no power to prescribe a rate from any point within the State of Kentucky to Louisville which shall be less than the rate which the company has fixed from Nashville to Louisville. Nor are we to suppose that competition between Nashville and Louisville is limited to the matter of the transportation of tobacco. It is a competition between water and railroad transportation, and naturally extends to all articles of freight as well as to passengers. By the reasoning of the opinion the State of Kentucky would be powerless to compel the Louisville and Nashville Company to charge a less than the competitive Nashville rate, no matter how reasonable, from any

point within its borders to Louisville. It does not seem to me that much is left of state control over local rates.

In the opinion of the court it is said :

" The result of the construction of this provision by the court below is in effect to prohibit the carrier from making a less charge for the transportation from Nashville to Louisville than from Franklin to Louisville, or else to make a charge that will prevent its doing any business between the States in the carrying of tobacco. The necessary result of the provision under the circumstances set up in the answer directly affects interstate rates, or, in other words, directly affects interstate commerce, for it directly affects commerce between Nashville and Louisville. . . . We fully recognize the rule that the effect of a state constitutional provision, or of any state legislation, upon interstate commerce must be direct and not merely incidental and unimportant; but it seems to us that where the necessary result of enforcing the provision may be to limit or prohibit the transportation of articles from without that State to a point within it, or from a point within to a point without the State, interstate commerce is thereby affected, and may be thereby to a certain extent directly regulated, and in that event the effect of the provision is direct and important and not a mere incident."

The fallacy of this is that it makes transportation by the Louisville and Nashville Company essential to commerce between Nashville and Louisville. The burden of the complaint on the part of the company is that there is competition at Nashville for the transportation of tobacco to Louisville, and that it must make a low charge to get a share of that transportation ; not that the tobacco will not be transported, not that commerce will be interfered with, but that this company will lose some portion of that transportation. In other words, the power of the State of Kentucky over this corporation, which it has created, in respect to local rates, is denied in order that the corporation may obtain some portion of interstate transportation. I think we may well recall what was said only three weeks since by this court in the opinion in the case referred to of this same company against the Commonwealth of Kentucky :

"It may be that the enforcement of the state regulation for-bidding discrimination in rates in the case of articles of a like kind carried for different distances over the same line may some-what affect commerce generally; but we have frequently held that such a result is too remote and indirect to be regarded as an interference with interstate commerce; that the interference with the commercial power of the general government to be unlawful must be direct, and not the merely incidental effect of enforcing the police powers of a State. *N. Y. Lake Erie & Western Railroad* v. *Pennsylvania*, 158 U. S. 431, 439; *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 150."

Another matter is worthy of consideration. Suppose that Congress enacts that an interstate rate shall be the sum of the local rates prescribed by the several States for the parts of the through line within their borders. Will it be contended that this is an interference with the power of the State over local rates? Does the mere fact Congress accepts the local rates and makes them the basis of an interstate rate make it an interfer-ence by Congress with local commerce? And if that be not so, how on the other hand can it be held that a mere recognition by the State of existing interstate rates as a basis for its legis-lation concerning local rates is an interference with interstate commerce?

I do not suppose it will be seriously contended that the de-fendant can invalidate all the local rates which the legislature of Kentucky may see fit to enforce by simply saying that out-side of the State it somewhere touches a competitive point and is forced to reduce its interstate rates by reason of the compe-tition there existing. In other words, if in the present case there was in fact no water competition between Nashville and Louisville, or if there was no tobacco shipped from Nashville to Louisville, I take it no one would seriously contend that the railroad company, by affirming that there was, could upset the provisions of the Kentucky legislation. There would be a ques-tion of fact to be determined, even according to the theory that competition in interstate rates has anything to do with local rates, and that question of fact might be presented in actions like the present, actions for overcharges, actions in which the

parties would have the right to trial by jury. Suppose that one jury upon the testimony presented before it should find that there was water competition between Nashville and Louisville, and that there was tobacco shipped between the two places, and another jury upon the testimony introduced in a succeeding case exactly the contrary, is the legislation of Kentucky to be declared unconstitutional in one case and constitutional in the other?

It seems to me, in conclusion, that a state legislature has full power over local rates, subject only to the restriction that it cannot require a carrier to carry without reasonable compensation, and that when it legislates for local rates alone it may fix those rates by figures, or upon the basis of any standard which it sees fit to adopt, and the mere fact that it bases them upon some standard is not legislation regulating that standard—the local rates are alone the matter regulated. For these reasons I cannot concur in the opinion and judgment.

I am authorized to state that MR. JUSTICE GRAY agrees with this dissent.