## AMY S. JOHNSON vs. UNION PACIFIC RAILROAD CO.

MARCH 27, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Garnishment.   Railroads.   Interstate Commerce.*

Where a railroad company operating in Rhode Island had in its possession
freight cars of defendant company, organized under the laws of another
State, and operating its road outside of this State, under an arrangement
by which the local company had the right to use the cars of defendant in
its business until such time as it might find it convenient to return the same
to defendant, the company has such an immediate interest in the property
and right of use that the cars are not subject to foreign attachment as the
property of defendant in the possession of the local company.

Whether an attachment of this kind is an interference with interstate commerce
is not decided.

(2)  *Garnishment.   Corporations.   Situs of Debt.*

The New York, New Haven and Hartford R. R. Co. was incorporated in
Rhode Island, Massachusetts, and Connecticut, and operated lines of road
in all of said States; all of the corporations were administered by one board
of directors and by a single corporate organization;  the principal offices
were in the State of Connecticut:—

*Held*, that, whether the company was a single corporation incorporated within
three States, or three corporations which practically have become so con-
solidated that their affairs can not be separated, the situs of an indebted-
ness due to another company on the joint or consolidated business, for the
purposes of garnishment, was in either State.

(3)  *Garnishment.   Interstate Commerce.*

Accounts payable to a foreign railroad company, in the hands of a local rail-
road company, are subject to garnishment, although they may have arisen
out of the conduct of interstate commerce.

TRESPASS ON THE CASE for negligence.   Heard, on certifica-
tion from Superior Court, on defendants motion to dismiss.

PARKHURST, J.   This cause is before the court upon a motion
to dismiss, for lack of jurisdiction, made upon a special appear-
ance entered by the defendant for this purpose only.   The
motion came before the Superior Court for hearing, and, as in
the opinion of that court the questions of law arising on the
motion were of such doubt and importance and so affected

the merits of the controversy that they ought to be determined by the Supreme Court before further proceeding, the questions arising upon this motion were certified to this court under the provisions of section 478 of the Court and Practice Act.

The action is one of tort, arising out of an accident which occurred on the road of the defendant in the State of Kansas, and is brought by the plaintiff, Amy S. Johnson, against the defendant, the Union Pacific Railroad Company, a corporation organized under the laws of the State of Utah, and was commenced by process of foreign attachment under the provisions of section 524 of the Court and Practice Act by service upon the New York, New Haven and Hartford Railroad Company, a Rhode Island corporation, as garnishee. Several services upon the garnishee were made before the substituted service by mail upon the defendant and before the return-day of the writ; no question is raised as to the form of the writ or as to the due and lawful service thereof upon the garnishee, the only questions being as to the sufficiency of the garnishment to give jurisdiction to the court growing out of the nature of the property sought to be garnished in this proceeding.

The garnishee, in due course, filed its affidavit (omitting the formal opening), as follows: "That the service of said writ upon said New York, New Haven & Hartford Railroad Company was made on the 21st day of July, 1905 and also upon the 1st day of August, 1905, and that at the time of said several services of said writ on said New York, New Haven & Hartford Railroad Company, there was in the hands and possession of said New York, New Haven & Hartford Railroad Company no personal estate of said defendant directly or indirectly except as herein stated; that said New York, New Haven & Hartford Railroad Company at the time of both said services had in its possession in the State of Rhode Island one freight car belonging to the defendant corporation and numbered 65,663; that both said New York, New Haven & Hartford Railroad Company and said Union Pacific Railroad Company, the defendant, are common carriers of goods by railroads and were such at the time of the several services of said writ as aforesaid; that at the time of the services of said writ upon

said New York, New Haven & Hartford Railroad Company, for a long time prior thereto, and ever since that time, an arrangement and understanding has existed between the said defendant, the Union Pacific Railroad Company, and said New York, New Haven & Hartford Railroad Company, according to a custom universal in such cases among corporations operating lines of railroad throughout the United States in the management of their freight business, by which custom, instead of unloading and transferring freight from the cars of one company to the cars of another at the point.of connection, each corporation receives the loaded cars of the other, direct or from and through connecting lines as the case may be, hauls them to their place of destination on its own line and after discharging the freight contained therein, returns them as soon as and when practicable in the due course of business, reloaded with freight to some point on or near or reached by the line of railway of the company owning them; that under the arrangement and understanding existing as aforesaid, the New York, New Haven & Hartford Railroad Company had the right to use in its business and for its own purposes the car aforesaid until such time as it might find it convenient and deem it proper to return the same, and the cars owned by said New York, New Haven & Hartford Railroad Company while on the lines of the Union Pacific Railroad Company were in like manner in current and constant use by the Union Pacific Railroad Company at all times; and that in accordance with said understanding and agreement, the company owning any such car or cars is compensated for the wheelage or mileage thereof by the company in whose possession the same are; that the aforesaid method of receiving and returning railroad cars of other lines by railroads, facilitates traffic and is a great accommodation to the shipping public and has become a part of the general system of freight transportation throughout the United States; that it would be practically impossible for the New York, New Haven & Hartford Railroad Company to carry on its business without an arrangement and understanding of this character with other lines of railroads, and that said New York, New Haven & Hartford Railroad Company, under

the arrangement and understanding aforesaid, was, at the time of the several services of the writ in this action upon it, entitled to hold and use for its own purposes as aforesaid and for its business said car of the Union Pacific Railroad Company then in its possession, free and discharged of and without interference from attachment or garnishment proceedings herein; and that the maintenance of said proceedings would nullify the rights of the garnishee to said car under the arrangement and understanding with the defendant hereinbefore mentioned, and interfere seriously with the proper movement of traffic and the accommodation of the shipping public; and that said car, at the time of the several services of said writ upon the New York, New Haven & Hartford Railroad Company, was used in commerce among and between the different states of the United States and in accordance with the laws of the United States whereby every railroad company in the United States, whose road is operated by steam, is authorized to carry upon and over its road freight and property on its way from one state to another state, and any interference therewith by attachment or garnishment proceedings would be in violation of Section 8, Article 1, of the Constitution of the United States, which provides that Congress shall have power to regulate commerce among the several states.

"And I further on oath depose and say that the New York, New Haven & Hartford Railroad Company, in addition to its incorporation in Rhode Island as aforesaid, is incorporated by act of the Legislature of the State of Connecticut, in which state the corporation was first organized under that name, and the Legislature of the Commonwealth of Massachusetts, and operates various lines of railway in the States of Connecticut, Massachusetts, Rhode Island, and New York, and that the corporations incorporated by all of said states are administered by one Board of Directors and by a single corporate organization, and that the principal office of said corporation is in the State of Connecticut, the first incorporating state; that at the time of the first service of said writ as aforesaid, there was due and payable in the City of New Haven, in the State of Connecticut, from the various corporations known as New

York, New Haven & Hartford Railroad Company, and organized and operating as aforesaid, to the Union Pacific Railroad Company, the defendant, the sum of Eight Hundred and Four and 46–100 ($804.46) Dollars as a balance due on the accounts between said companies; and that at the time of the service of the second writ as aforesaid there was in like manner due from said New York, New Haven & Hartford Railroad Company to said Union Pacific Railroad Company the sum of Nine Hundred and Nineteen and 91–100 ($919.91) Dollars; that the consideration for the charges by the Union Pacific Railroad Company against the New York, New Haven & Hartford Railroad Company, from which said balance accrued, was in part for the use by said New York, New Haven & Hartford Railroad Company of the cars of the Union Pacific Railroad Company, in accordance with the traffic arrangement and understanding hereinbefore referred to, in part for tickets sold by the New York, New Haven & Hartford Railroad Company upon some part of its system as aforesaid, the proceeds of which were payable to the Union Pacific Railroad Company, and in part for repairs made by the Union Pacific Railroad Company upon cars belonging to the New York, New Haven & Hartford Railroad Company; that all accounts out of which said balance grew were kept at said principal office of the New York, New Haven & Hartford Railroad Company in the City of New Haven, in the State of Connecticut, and that the balance so due was payable at said principal office in the city of New Haven, Connecticut; that the situs of the said indebtedness from the New York, New Haven & Hartford Railroad Company to said Union Pacific Railroad Company, the defendant, was at its said main office in New Haven, Connecticut.

"I further on oath depose and say that it is impossible to state how much, if any, of said balance was due from said New York, New Haven & Hartford Railroad Company, the Rhode Island corporation, to said Union Pacific Railroad Company, or how much thereof was due to said Union Pacific Railroad Company from said corporation, or from any of said corporations for or by reason of the use of any of its cars in the State of Rhode Island, or for tickets sold as aforesaid within said

State, and that such indebtedness, as this deponent is informed and verily believes, is not subject to attachment or garnishment in these proceedings."

The motion to dismiss sets forth in substance that no valid attachment of property has been made, and no personal service, and that therefore the court has no jurisdiction to entertain this suit, either as a preceding *in rem* or *in personam.*

Upon hearing had before the Superior Court, the following questions were certified to this court for its determination, namely:

"1.   Is a freight car belonging to the defendant corporation, said corporation being organized and existing under the laws of the State of Utah and said car being in the possession of the New York, New Haven & Hartford Railroad Company, under the conditions set forth in the garnishee's affidavit filed by said last named railroad company in this case, subject to attachment in a tort action brought by this plaintiff against said defendant corporation organized and existing as aforesaid under the laws of the State of Utah?"

"2.   Are the moneys belonging to said defendant corporation, organized and existing under the laws of the State of Utah, in the hands and possession of said New York, New Haven & Hartford Railroad Company and held by it under the conditions set forth in the affidavit of said last named corporation filed in this case, subject to attachment and garnishment in a tort action brought by this plaintiff against said defendant corporation organized and existing as aforesaid under the laws of the State of Utah?

(1)   As to the first question, we are of the opinion that it must be answered in the negative.   This same case was recently before the United States Circuit Court for the District of Rhode Island (145 Fed. 249), on precisely the same state of facts set forth in said affidavit, and in a careful and well-considered opinion Judge Brown, of that court, held as follows:

"By the garnishee's affidavit, it appears that, at the dates of several services upon it, it had in its possession certain freight cars belonging to the defendant, but that it held the same under an arrangement with the defendant whereby the New

York, New Haven & Hartford Railroad Company has a right to use the cars in its own business until such time as it may find convenient and proper to return the same reloaded with freight to some point on or near or reached by the line of railway of the defendant.

"The defendant contends that the garnishee has such an immediate interest in the property, and such a right of use of the cars, that when it has exercised this right the cars will have reached the possession of the defendant in a foreign jurisdiction, and thåt it will be beyond the power of the garnishee to return the cars, or of the court to obtain a return. It is urged that the garnishee can not be deprived of its right to use the property by reason of a controversy between other parties in which it has no interest, citing Drake on Attachment (3d Ed.) p. 462, as follows:

"'It is an invariable rule that under no circumstances shall a garnishee, by the operation of proceedings against him, be placed in any worse condition than he would be in if the defendant's claim against him were enforced by the defendant himself,' citing, also, *C. F. Wall* v. *Norfolk & Western Ry. Co.*, 52 W. Va. 485, 44 S. E. 294, 64 L. R. A. 501, 94 Am. St. Rep. 948; *Michigan Central R. R. Co.* v. *Chicago, Michigan & Lake Shore R. R. Co.*, 1 Ill. App. 399; *Connery* v. *Quincy, Omaha & Kansas City R. R. Co.* (Minn.), 99 N. W. 365, 64 L. R. A. 624, 104 Am. St. Rep. 659.

"The plaintiff argues that, in the case at bar, there was no express agreement giving to the New York, New Haven & Hartford Railroad Company the right to use the cars; and it is objected that the defendant relies merely upon a custom, and that that custom is of the most vague and indefinite kind. It is contended that this is, in effect, merely a license or privilege to use cars for hire practically as it sees fit, and must yield to the greater right of a creditor and a resident of this state to attach the property. It is argued that the rule that the garnishee can not be placed in a worse position by the attachment has its exceptions, and does not permit a garnishee to return the goods or articles attached, freed from the attachment, to the owner.

"The proposition that the plaintiff, in trustee process, can not be placed in a better position than the principal defendant, is recognized in *Waldron* v. *Wilcox*, 13 R. I. 518, 520; *Brown* v. *Collins*, 18 R. I. 242, 27 Atl. 329; *Smith* v. *Millet*, 11 R. I. 528.

"It is difficult to see upon what principle the plaintiff can be allowed, by his attachment, to destroy the right of the New York, New Haven & Hartford Railroad Company to use these cars in the state of Rhode Island, to load them with freight, and to transport them through or into other states. It is also quite clear that the burden of returning these cars from another state to the state of Rhode Island can not be imposed upon the garnishee. The cases cited by the defendant are direct authorities for this position. It therefore becomes unnecessary to consider the general question of the right to make garnishment of rolling stock, or whether such garnishment would constitute an obstruction of or interference with interstate commerce. I am of the opinion that the jurisdiction of this court can not be supported by virtue of the attempt to attach the defendant's cars in the possession of the garnishee."

We are fully convinced by the reasoning above quoted, and believe it to be well supported by the authority of carefully considered cases, as cited in the opinion. Nor do we find among the numerous cases cited upon the plaintiff's brief to this point any cases which are in serious conflict with the position herein taken. Such cases as the plaintiff cites sustaining the attachability of rolling-stock of railway corporations relate solely to rolling-stock belonging to the defendants in the cases cited, and directly attached in suits against the defendants, not being subject to any such right or interest on behalf of any garnishee as is shown in this case. The interstate commerce question was not raised. As it does not appear in the affidavit whether or not the freight car of the defendant was in actual use by the garnishee in the course of interstate commerce, or was idle, at the time of its attempted garnishment, we have not thought it necessary to decide the question whether or not the attachment of rolling-stock under these circumstances is an interference with interstate commerce.

(2)    As to the second question, whether the moneys of the defendant corporation shown by the affidavit to be in the hands of the garnishee are subject to attachment and garnishment, we are equally in accord with the opinion of Judge Brown, above cited, and feel constrained to answer that question in the affirmative. This question involves two considerations viz.: (1) Whether the moneys sought to be garnished were due from the Rhode Island corporation; and (2) whether such moneys arose from the operations of interstate commerce and are so intimately connected therewith that the attachment of such moneys would be an interference with interstate commerce and so void, as being in violation of the provisions of the constitution of the United States, in relation to interstate commerce. Upon both these points we feel that we can adopt the language of Judge Brown in the opinion already cited (145 Fed. pp. 251 *et seq*), as follows:

"The next question is whether the plaintiff has succeeded in garnishing a debt due from the garnishee to the defendant.

"The garnishee makes oath that the New York, New Haven & Hartford Railroad Company, in addition to its incorporation in Rhode Island, is incorporated by act of the Legislature of the state of Connecticut, in which state the corporation was first organized under that name, and by the Legislature of the commonwealth of Massachusetts, and operates various lines of railway in Connecticut, Massachusetts, Rhode Island, and New York; that the corporations incorporated by all of said states are administered by one board of directors, and by a single corporate organization; that the principal office is in the state of Connecticut, the first incorporating state.

"The garnishee sets forth that, at the times of various services upon it, there were due and payable in the state of Connecticut, from the various corporations known as the New York, New Haven & Hartford Railroad Company to the Union Pacific Railroad Company, certain sums, as the balances due on accounts between the Union Pacific Railroad Company and the New York, New Haven & Hartford Railroad Company; that the consideration for the charges by the Union Pacific Railroad Company against the New York, New Haven & Hart-

ford Railroad Company, from which said balances accrued, was in part for use by the New York, New Haven & Hartford Railroad Company of cars of the Union Pacific Railroad Company, in part for tickets sold by the New York, New Haven & Hartford Railroad Company upon some part of its system as aforesaid, the proceeds of which were payable to the Union Pacific Railroad Company, and in part for repairs made by the Union Pacific Railroad Company upon cars belonging to the New York, New Haven & Hartford Railroad Company; that all accounts out of which said balance grew were kept at the principal office of the New York, New Haven & Hartford Railroad Company in New Haven, in the state of Connecticut; that the balances due were payable at said principal office; that the situs of said indebtedness was at the main office in New Haven.

"The garnishee further swears that it is impossible to state how much, if any, of said balances was due from the Rhode Island corporation, or how much was due to said Union Pacific Railroad Company from said Rhode Island corporation or from any of said corporations for or by reason of the use of any of its cars in the state of Rhode Island, or for tickets sold as aforesaid within said state.

"It sufficiently appears from the garnishee's affidavit that the New York, New Haven & Hartford Railroad Company does business in three states under a single administration.

"It is the defendant's contention that the Rhode Island incorporating act of May 17, 1893 (Acts & Resolves, January Session, 1893, p. 377), created an independent Rhode Island corporation; that it did not merely re-incorporate a foreign corporation in this state; that consequently the Rhode Island corporation can be liable only for an unascertainable proportion of the balance due to the Union Pacific Railroad Company; and that this is a liability which it owes to the Connecticut corporation rather than to the Union Pacific Railroad Company directly.

"The status of the New York, New Haven & Hartford Railroad Company has been before the courts of this circuit. *Smith* v. *N. Y., N. H. & H. R. R. Co.* (C. C.), 96 Fed. 504;

*Goodwin* v. *N. Y., N. H. & H. R. R. Co.* (C. C.), 124 Fed. 358. In these cases the questions related to citizenship.

"It does not seem necessary, however, to determine whether the Legislature of Rhode Island re-incorporated in this state a pre-existing corporation of the state of Connecticut, or of Massachusetts, or created a new corporation of Rhode Island with the same name and powers within this state. Whether the garnishee is a single corporation incorporated within three states, or three corporations which practically have become so consolidated that their affairs can not be separated, I am of the opinion that the situs of the indebtedness on the joint or consolidated business, for the purpose of garnishment, is in either state.

"The practical inconvenience of adopting any other view is so great that we should hesitate to confuse by judicial decision what the stockholders of the various corporations of the New York, New Haven & Hartford Railroad Company have seemed to regard as a very simple arrangement. In *Goodwin* v. *N. Y., N. H. & R. R. Co.* (C. C.), 124 Fed. 358, 370, Judge Lowell said:

" 'Whether the organization is deemed (1) a single corporation, (2) one corporation with several aspects, (3) several separate corporations of which only one is recognized in each of the creating states, or (4) several separate corporations each recognized everywhere, is of no importance, except for the practical results which follow the adoption of one fiction or another. . . . It is not a question of justice, but of ultimate convenience, in what court a corporation may sue or be sued. It is injustice, and not mere inconvenience, that an organization of any kind shall be compelled to pay its debts twice over. In selecting a fiction, moreover, it may sometimes be wise to take one which has some slight inconvenience in practical results, if its logical development is generally convenient, rather than another which has a slight advantage in some respect, but whose logical development would lead to such injustice that exceptions and sub-fictions must be numerous and strained.'

"What the stockholders of the New York, New Haven & Hartford Railroad Company have joined together so completely

for their business convenience can not be practically separated when it comes to the question of the situs of an obligation for purposes of garnishment.    There is a practical unity of organization extending over three distinct jurisdictions.    If we are to separate the corporations sharply, the same reasons which exist for denying that the situs of the debt is in Rhode Island would exist for denying that it is either in Massachusetts or Connecticut.    The result would be that what, from a practical point of view is a single obligation, would, by an artificial division, require either a difficult accounting to determine the proportional parts of the obligation assumed by each corporation, or would require us in each instance to dismiss a suit begun by garnishment of the New York, New Haven & Hartford Railroad Company.    The location of a business office for the transaction of affairs of the three corporations in the State of Connecticut can not compel the plaintiff to resort to that jurisdiction.

(3)    "It is further contended that no garnishment process can run against accounts payable to a foreign railroad corporation arising out of the conduct of interstate commerce.    The defendant relies upon *Philadelphia S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. Ed. 1200.    I am unable to see the applicability of that case.    That a state tax upon the gross receipts of a steamship company, derived from the transportation of persons and property by sea, is held to be a regulation of interstate and foreign commerce in conflict with the exclusive powers of Congress under the Constitution, does not lead to the conclusion that the earnings of a railroad company in interstate commerce are free from attachment for its debts.    There is no analogy between the cases, and no authority is cited having any tendency to support the defendant's proposition.

"I am of the opinion that the state court acquired a limited jurisdiction by virtue of the attachment of a *res*."    . . .

The defendant's brief cites no case directly in conflict with the principles above set forth relating to the question of the right to garnish said moneys, on the ground that such garnishment is void as an interference with interstate commerce.

The closest analogy is found in the case of *Davis* v. *C. C. C. & St. L. R. R. Co.*, 146 Fed. 403, 413, decided in the United States Circuit Court for Iowa, less than a month later than Judge Brown's decision, wherein it was held that sums due to a defendant railroad company (non-resident of the State where suit is brought) for its share of freight money earned on continuous interstate shipments over connecting lines and collected by the final carrier, are as much a part of interstate commerce as the actual carriage of the property; and so are not attachable by garnishment in the posession of the final carrier. As that suit relates to freight money earned, it is not directly in point. Furthermore, it does not settle the question finally, even in that suit, as it may not be affirmed on appeal. Nor do we consider this decision as authoritative upon principle; but, on the contrary, we consider it as extremely doubtful, since in our view freight money when earned, remaining in the hands of the final carrier, would be a mere debt, with no special and peculiar character, subject to suit at law by the creditor road, if not paid, and so having only the common character of any simple contract or book indebtedness, and liable to garnishment by the common rule.

As to the question of the situs of the debt sought to be garnished in this case, and whether it was payable in Connecticut or in Rhode Island, and in support of the position above taken by Judge Brown and adopted by this court, that it may be garnished in Rhode Island, see *Chicago, R. I. & P. R. R. Co.* v. *Sturm*, 174 U. S. 710; *Wyeth Hardware &c. Co.* v. *Lang*, 127 Mo. 242; *Howland* v. *Ry. Co.*, 134 Mo. 474; *Wabash R. R. Co.* v. *Dougan*, 142 Ill. 248; *Railroad* v. *Barnhill*, 91 Tenn. 395; *Railroad* v. *Stollenwerck*, 122 Ala. 539; *Mahany* v. *R. R. Co.*, 15 West Va. 609; *Smith* v. *R. R. Co.*, 33 N. H. 337.

Upon the authority of all the above cases, we are satisfied that the Union Pacific Railroad Company, the defendant in this suit, could have maintained its action at law either in this State or in Connecticut for the balance of indebtedness in its favor disclosed by the garnishee's affidavit; hence we are of the opinion that the plaintiff in this suit has obtained a lawful attachment and garnishment of the moneys in question,

sufficient to give to the Superior Court limited jurisdiction of the plaintiff's suit, so far as this money is concerned.

The papers in the cause will be returned to the Superior Court, with the decision of this court certified thereon.

*Alfred S. Johnson and Lewis A. Waterman,* for plaintiff.

*Gardner, Pirce & Thornley,* for defendant, appearing specially.